MARY E. BALDWIN *vs.* EDGAR G. HIGGINS *et al.*

JULY 28, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action of assumpsit to recover on a promissory note made by the defendants Edgar G. Higgins and his wife, Hilda, under date of November 4, 1925, for the sum of $3000, payable to the order of the plaintiff one year after date, with interest, payable semiannually in advance at the rate of 8% per annum. The payment of this note was secured by a second mortgage deed to the plaintiff executed by the defendants on the date of the note, covering certain real estate in the city of Cranston in this state.

The declaration contains a count in special assumpsit on the note and also the common counts. The defendants pleaded: (1) The general issue; (2) the statute of limitations; and (3) a special plea to the effect that, on November 23, 1925, the defendants conveyed the mortgaged real estate to certain grantees, who "agreed to pay said promissory note, of which facts said plaintiff had notice and at

that time the plaintiff agreed to and did accept the said grantees as the sole obligors on said promissory note and thereafter accepted payments on said promissory note from said grantees and agreed to look solely to said grantees on all future payments on said promissory note."

The case was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiff in the sum of $4069.32, including interest. The defendants' motion for a new trial was heard and denied. The case is before us on the defendants' exceptions to rulings during the trial; to the refusal to grant certain requests to charge, and to the denial of their motions for a directed verdict and for a new trial.

The following undisputed facts appear in evidence: (1) The real estate covered by the mortgage to the plaintiff, dated November 4, 1935, was subject to a first mortgage for $6000 to Annie Higgins, mother of Edgar G. Higgins. (2) By warranty deed, dated November 23, 1925, the defendants conveyed that real estate to Thomas F. Caulfield and his wife Margaret, the former being the father-in-law of the defendant Edgar G. Higgins. This deed recited that the granted premises were free from all incumbrances "Except mortgages of record." The grantees did *not* therein assume payment of plaintiff's mortgage. (3) Following the initial transaction of November 4, 1925, all payments of interest and one payment of $150 on principal were received by the plaintiff from or through Caulfield. The receipts for such payments were made out in Caulfield's name by plaintiff's husband. (4) Interest was paid on the mortgage to May 4, 1934. On July 20, 1934, there was a foreclosure sale under the first mortgage to Annie Higgins. (5) Suit on the note in question here was commenced by writ of attachment dated June 15, 1939.

The evidence, however, is sharply conflicting on the controlling issue of whether Caulfield made the payments on the mortgage for the defendants, or whether such payments were made by him in his own behalf, without defendants'

consent, under an agreement with the plaintiff that she would look to him and not to the defendants for the payment of the mortgage and note. On this point, the plaintiff testified that, while Caulfield's daughter came to her home with payments of interest on the mortgage, she always "looked to Higgins" for her money; that, until this case was tried, she did not know Caulfield nor did she know that Higgins had sold the property to him; and that she made no agreement of any kind with Caulfield with reference to the mortgage and note.

Plaintiff's husband testified that the interest due May 4, 1926 was paid to him by Caulfield personally at the plaintiff's house, and that, with the exception of this one payment all other payments were made at that place by Caulfield's daughter. In answer to a question by defendants' counsel in cross-examination, he testified, without objection from him, that Caulfield then told Baldwin that he was "acting for Higgins * * * he was paying it (the interest) for Mr. Higgins." He also testified that Caulfield wanted the receipt in his name so that "he could go and give that receipt to Higgins" to show that the interest was paid. He denied that Caulfield ever told him he had bought defendants' house.

The defendant Edgar G. Higgins testified that, when he signed the mortgage and note in question, he told plaintiff's husband that he had an agreement to sell the real estate to Caulfield. "I think I told him at the time that Mr. Caulfield was going to assume the two mortgages, my mother's and his." He further testified that shortly after that sale, on November 23, 1925, he met plaintiff's husband and told him: "That deal has gone through, Mr. Caulfield is the new owner of the property and is *taking over* the mortgages. * * * Q. Did he say anything in return? A. Well, I don't remember exactly what he did say." (italics ours) Higgins denied that thereafter Caulfield and his daughter were acting for him in their dealings with the plaintiff.

Caulfield testified that when he made the first payment of interest to plaintiff's husband in May 1926, he told him that he then owned the property which was covered by plaintiff's mortgage, and that he was the one to whom the plaintiff "would look for the payment of the mortgage. * * * Q. Did Mr. Baldwin, John Baldwin, here ever agree to make an agreement with you whereby, as agent for Mrs. Baldwin, that he would take you or accept you in place of Mr. Higgins in payment of that note? A. No. Q. Did Mary E. Baldwin herself ever agree with you to accept you in place of Higgins upon the payment of this mortgage note? A. No, no; never saw the lady."

The defendants' first exception is to the denial of their motion for a directed verdict. Under this exception they make two contentions: First, that since Caulfield made all payments on the mortgage after the negotiations in 1925, the plaintiff released them from all liability on the mortgage note by agreeing to substitute Caulfield as her debtor in their place and stead on that instrument; and second, that, in any event, recovery on that note was barred by the statute of limitations, as no action was brought thereon against them until after the lapse of more than twelve years from its maturity date. Both of these contentions are argued by the defendants as if the evidence were undisputed that Caulfield, with the plaintiff's knowledge and consent, was acting for himself and not for the defendants in his dealings with the plaintiff, whereas the evidence is in serious conflict on this point.

Fundamentally, this case presents a question of fact and not of law. The case of *Industrial Trust Co.* v. *Goldman*, 59 R. I. 11, upon which the defendants strongly rely, is clearly distinguishable in its facts from the instant case. The differences in the facts of the two cases are so obvious that we can dismiss the *Goldman* case as inapplicable to the case at bar without further discussion.

We have repeatedly said that on a motion by a defendant for a directed verdict, the trial justice is not concerned with

the credibility of the witnesses or the weight of the evidence; also that, on such a motion, the evidence and every inference of fact which can reasonably be drawn therefrom must be construed most favorably to the plaintiff. In the instant case, the conflicting evidence on the controlling issue is fairly open to conclusions quite different from those reached by the defendants. On such conflicting evidence, it might well be found that the plaintiff did not agree to substitute Caulfield for the defendants as her debtor on the mortgage note; and further, that Caulfield, in reality, was acting for the defendants in paying on that note under some understanding between them to which the plaintiff was not a party.

In connection with the latter of these two possible findings of fact, which clearly would avoid the defense of the statute of limitations, we recall that Caulfield did not assume the plaintiff's mortgage in the deed to him from these defendants, a fact which the defendant Edgar G. Higgins well knew when, according to his testimony, he told plaintiff's husband that Caulfield was "taking over" that mortgage. This ambiguous language by Higgins, when interpreted in the light of defendants' deed to Caulfield and other surrounding circumstances, can be reasonably construed as a mere notice from the defendants to the plaintiff that, in the future, they intended to make all payments on their mortgage through Caulfield. The undisputed and the conflicting evidence in this case, when viewed as a whole, raised questions of fact for the jury. The defendants' exception to the denial of their motion for a directed verdict is therefore overruled.

The defendants' next exception is to the denial of their motion for a new trial. The controlling issue of fact in this case, which we have already mentioned, was submitted to the jury under proper instructions. By their verdict that issue was necessarily decided by the jury adversely to the defendants. The trial justice approved the verdict in a decision from the bench which is reported in the tran-

script before us. Even though contrary conclusions were possible upon a fair consideration of all the evidence and the reasonable inferences therefrom, yet, from our examination of that evidence, we cannot say that the trial justice was clearly wrong in approving the verdict of the jury. This exception is therefore overruled.

Defendants excepted to plaintiff's question asking John Baldwin if he had any authority as agent of the plaintiff to receive interest from Caulfield with the understanding that Caulfield was to assume payment of the Higgins mortgage. His answer was: "I don't think so." This question should have been excluded. While it was improper for him to give his opinion or state his conclusion as to the fact of the agency—*Martin* v. *St. Aloysius Church*, 38 R. I. 339, 358—the allowance of the question, however, was harmless error, as there was competent evidence in the case which clearly showed that he had no such authority. This exception is overruled.

The defendants press exceptions to the refusal of the trial justice to grant five requests for instructions. We have examined these requests and find that two failed to include necessary elements to support the conclusion which they sought while the other three were substantially covered in the charge to the jury. These exceptions are overruled.

The defendants' other exceptions have been examined and found to be without merit.

All of the defendants' exceptions are overruled, and the case is remitted to the superior court with direction to enter judgment on the verdict.

*Daniel A. Colton,* for plaintiff.

*William S. Flynn,* for defendants.